## BURGAN *v.* SIEGMAN ET AL.

*Evidence — Ancient documents — Plats, written instruments and tax bills — Admissible to prove disputed boundary line, when — Error to charge jury — No evidence to sustain defense.*

1. In an action for the possession of real estate, which arose out of the proper location of defendant's lot, where the witnesses disagree as to the data from which a survey should be made, it is error for the court to refuse to admit in evidence certain plats made by a former owner of the property, which included the lot in question.

2. It is error for the court in such case to refuse to admit in evidence written agreements made by the heirs of a former owner of the property which included the lot in question, where the agreements set out the sizes of the lots apportioned thereunder.

3. A plat containing the handwriting of a former owner of property, and which came from the custody of the executor of such person, is admissible in evidence as an ancient document, even though such plat was not duly acknowledged or recorded.

4. A letter and list of property furnished the county auditor; after the original records had been destroyed, which showed the taxable property of a former owner of the property as well as the tax bills for such property, are admissible in evidence as ancient documents, for the purpose of indicating the size and description of certain lots.

5. Where no evidence is offered to sustain a defense it is error for the court in its charge to submit such defense to the jury.

(Decided April 7, 1917.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Lorbach & Garver,* for plaintiff in error.
*Mr. John O. Eckert,* for defendants in error.

JONES, OLIVER B., P. J. This is an action for the possession of real estate, formerly known as an action in ejectment, for the recovery of a strip of land fronting 14.78 feet upon the northerly side of Harrison avenue in what is known as the Joseph A. James' Subdivision of Fairmount.

The dispute between the parties arises because of a difference between surveyors as to the true lines of defendants' lot. Plaintiff in error was plaintiff below, and claimed that defendants' house encroached upon her lot something over fourteen feet, and asked for possession of her real estate together with damages for its unlawful detention. The defendants in their answer insisted that they were within their own lines and did not encroach upon plaintiff's lot; and for a second defense set up the statute of limitations and claimed that the plaintiff was barred by reason of adverse possession on their part for more than twenty-one years.

The trial resulted in a verdict for defendants, and plaintiff prosecutes error here to secure a reversal of the judgment entered upon that verdict.

In regard to the claim of adverse possession and the statute of limitations, it is conceded by counsel for defendants in error that the evidence failed to establish adverse possession on the part of defendants and their grantors for a period of twenty-one years. As the record failed to show any evidence of adverse possession for the full period of twenty-one years, it was error for the court in its charge to the jury to submit to them that question, but, instead, the court should have charged the jury that no evidence having been offered to sustain that defense it could not be considered by them.

The main question in the case was the proper location of defendants' lot. Three surveyors testified on behalf of the plaintiff and one on behalf of the defendants. The difference between their testimony and their findings was because of the data from which their respective surveys were made. The real question to be determined in deciding between the parties is the correct location of the west line of what is known as "the forfeit" of section 25, township 3, fractional range 2 of the Miami Purchase.

None of the surveyors found monuments or lines marking the location of the forfeit line immediately north of Harrison avenue. The three surveyors for the plaintiff fixed the west line of the forfeit by taking monuments and occupation along that line located south of Harrison avenue and extending the line so fixed north of Harrison

avenue. The surveyor for the defendants fixed
the line of the forfeit by first finding the east
line of the section, and then by survey marking
out a vertical forfeit line the exact number of
feet west of and parallel to the section line
that might be necessary to include one hundred
and six and two-thirds acres in a perfect square.
Evidence was offered to show that few if any of
the sections as shown in the original survey of
the Symmes Purchase were perfect squares, and
that in most instances surveys of that early date
showed a surplus in the lines.

The evidence shows that a tract of land con-
taining 4.2 acres, of which the land here in dis-
pute was a part, was conveyed to one William
Barr, by a deed from Christopher Walker, dated
April 1, 1820, that tract of land being triangular
in shape and the east line thereof being the west
line of the forfeit. This east line extended 7.50
chains along the west line of the forfeit, part of
said east line being north of Harrison avenue
(then Harrison pike) and part of it being south of
said avenue. Plaintiff offered certain plats of sub-
division made by William Barr and his heirs show-
ing a subdivision of land south of Harrison avenue,
and also showing a small triangular tract north
of Harrison avenue, part of said original Barr
tract, which includes the property in question in
this case. At the time these plats of Barr's sub-
division were made the part lying north of Har-
rison avenue did not belong to Barr, but the title
had passed into parties under whom plaintiff
claims. But both of these plats of the subdivision

delineated the west line of the forfeit extending along this plat.

The trial court refused to permit plaintiff to offer these two plats in evidence, being marked for identification "35" and "36." We think the court committed prejudicial error in refusing to admit this evidence.

Plaintiff obtained title to her property—and her brother, under whom defendants claim, also obtained title to his lot—under the terms of the will of their father Joseph A. James. The real estate of Joseph A. James was divided among his children by virtue of his will under certain written agreements executed by them, and deeds were made pursuant to said written agreements. The trial court refused to permit the introduction of these agreements, which set out the sizes of certain lots apportioned thereunder. In this we think the court erred, because they were clearly relevant as muniments of title in the chain of title of both plaintiff and defendants.

It appears from the evidence that a plat of subdivision of Joseph A. James, as recorded in deed book 151, at page 415, was partially destroyed in the courthouse fire of 1884, and afterwards partially restored in the recorder's office. This plat as introduced fails to show any subdivision of that part of the James property which had been formerly owned by William Barr and which constituted the small triangle north of Harrison avenue taken out of the four-acre triangular lot whose east line was the west line of the forfeit. A lithograph plat, however, was offered in evidence by the plaintiff, which had come from the custody of the executor

of Joseph A. James, and which contained his handwriting, and had been made for the purpose of selling lots of Joseph A. James' subdivision of Fairmount. This plat which is referred to as identification "5" in the record shows the Barr triangle lying north of Harrison avenue divided into eight lots, marked with the letters of the alphabet from "A" to "H," and shows lot "A" as having a width of 31 feet, and lots "B" and "C" each a width of 25 feet. Defendants' lot according to the description would be lot "C," and plaintiff became the owner of lot "A" under the division made of her father's estate, and acquired lot "B" under the will of her brother Allen M. James, who acquired it in the division of her father's estate. While all the surveyors agreed that they had not been able to find any record in the recorder's office, or in the record of the courts, showing these lettered lots platted by Joseph A. James, they testified that there were plats in existence in the auditor's tax plat and in the city engineer's office, showing this division.

Under the rule as to the admission of ancient documents, in the opinion of the court, the plat in question was admissible in evidence. While it might not carry the same weight as a duly acknowledged and recorded plat, still in the state of the record as developed by the evidence it was proper to permit plaintiff to introduce it for such weight as it might have.

The same ruling would also apply to identifications containing the letter and list of property furnished the auditor after the courthouse fire, showing the taxable property of the Joseph A.

James estate for the purpose of indicating the size and description of lots; and also to the tax bills offered for the same purpose.

A question somewhat involved among the surveyors, and as to which there is a discrepancy in the evidence, is the width of lot No. 56 of Joseph A. James' subdivision. This lot as shown by the restored plat in deed book 151 is marked with a width of 25 feet, while as shown in the deed description, the tax list and the tax bills, as well as in the agreement as to the division of the Joseph A. James property, it is fixed at a width of 37 feet. The surveyor of the defendants construed the plat of Joseph A. James' subdivision, because it showed a dotted line along the west line of lot 56, as showing it to be the west line of the forfeit, but there is nothing to indicate such to be the fact upon the plat offered; while on the Barr plat showing the east line of lot "A"—or rather lot 1 of Barr's subdivision, which is the same straight line as the east line of lot "A"—it is marked upon the two plats from the recorder's office which were refused by the trial court, and also upon the plat from the surveyor's office of the Barr subdivision shown in Exhibit 4 which was admitted.

A careful consideration of the whole record convinces the court that the verdict of the jury was contrary to the weight of the evidence.

For the reasons given the judgment below is reversed and the cause remanded for a new trial.

*Judgment reversed, and cause remanded.*

GORMAN and HAMILTON, JJ., concur.